IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DIANA JONETTE RINGGOLD, et al., | ) ) ) | CIVIL NO. 13-00479 SOM/KSC |
| Plaintiffs, | ) ) ) | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' |
| vs. | ) ) | MOTION FOR SUMMARY JUDGMENT |
| JEH JOHNSON, et al. | ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I.       **INTRODUCTION.**

Before the court are cross-motions for summary judgment filed by Plaintiffs Diana Jonette Ringgold ("Ringgold") and Victor Mazliah ("Mazliah") (collectively, "Plaintiffs") and by Defendants Jeh Johnson, in his official capacity as Secretary of the United States Department of Homeland Security; Lori Scialabba, in her official capacity as Acting Director of the United States Citizenship and Immigration Services ("USCIS"); and David Gulick, in his official capacity as USCIS District Director for Honolulu, Hawaii (collectively, "Defendants").  The court grants Defendants' motion and denies Plaintiffs' motion.

II.       **FACTUAL BACKGROUND.**

Plaintiffs challenge USCIS's denial of Plaintiff Diana Ringgold's I-130, Petition of Alien Relative, and Plaintiff Victor Mazliah's I-485, Application to Register Permanent

Residence or Adjust Status.  ECF No. 14, PageID # 77.

Ringgold, a U.S. citizen, met Mazliah, a citizen of Israel, in June 2009.  Administrative Record ("AR") at 83, 93. Ringgold was 21 years old at the time, and Mazliah was about three years older.  Id.  Ringgold says they began living together a few months later, then got married on October 24, 2009.  Id. At the time they got married, Mazliah was in the United States on a visitor visa set to expire in about a month.  Id. at 622.

On December 4, 2009, Ringgold filed a Form I-130 with USCIS seeking to establish her marital relationship with Mazliah for immigration purposes.  Id. at 76-77; ECF No. 14, PageID # 77-78.  Mazliah filed a Form I-485 with USCIS on the same date, seeking to adjust his status to that of a permanent resident given his marriage to a U.S. citizen.  AR at 434, 622-25.

On February 24, 2010, Ringgold and Mazliah were interviewed by USCIS.  AR at 66.  During the interview, Ringgold and Mazliah indicated that they had met in June 2009 and had gotten married on October 24, 2009.  Id.  According to Ringgold and Mazliah, at the end of the interview, the examiner informed them that their "case is approved."  ECF No. 31-1, PaageID # 294. As support, Ringgold and Mazliah cite to a copy of Mazliah's I-485 in which the "Approved Visa Petition" box is checked.  See AR at 622.  Although this copy is in USCIS's file for Mazliah, Mazliah does not say this document was ever sent to him with that

check mark.

   After waiting more than a year and a half without
getting a decision, Mazliah asked for an appointment with USCIS.
Id. at 66.  During a meeting on November 9, 2011, Mazliah noted
that Ringgold had made multiple trips to Australia because she
had obtained discounts from her ex-boyfriend that allowed her to
travel for only $150 per plane ticket.  Id. at 67.

   On December 22, 2011, Ringgold and Mazliah were again
interviewed by USCIS. Id.  According to USCIS, Ringgold and
Mazliah indicated that they had not lived together for most of
2011; Ringgold had been living in Australia while Mazliah had
been living in Hawaii.  Id.  During the interview, Ringgold said
she was not in frequent contact with her father.  Id.

   On March 14, 2012, USCIS issued a Notice of Intent to
Deny Ringgold's I-130, stating that she had failed to meet her
burden of proof regarding her relationship with Mazliah.  Id. at
58-60.  Plaintiffs' counsel responded to the Notice of Intent to
Deny on April 16, 2012.  Id. at 2-14.

   On May 3, 2012, USCIS interviewed Ringgold's father.
Id. at 70.  He indicated that, although he maintained steady
contact with his daughter, he had not been aware until his
interview with USCIS that she had gotten married.  Id.  He also
stated that Ringgold had brought her boyfriend Patrick to a
Thanksgiving gathering in November 2011, and that the two were

together until approximately March 2012.  Id.  Ringgold's father
indicated that she had previously dated an Australian man, had
lived with that man in Australia, and had intended to marry him.
Id.

On December 28, 2012, Ringgold's father and stepmother
were interviewed by USCIS.  Id. at 71.  They indicated that
Ringgold and her father had a good relationship; that Ringgold
had worked in Australia for a year as a nanny; that Mazliah was
introduced to them in July 2012 but not as Ringgold's husband;
that Ringgold's father had not known she was married until his
interview on May 3, 2012; that other relatives were unaware of
Ringgold's marriage; that Ringgold's father was not sure if
Ringgold loved Mazliah or if she lived with him; and that
Ringgold had recently expressed a desire to move in with them.
Id.

On January 22, 2013, Ringgold's stepmother indicated
that Ringgold was not living with Mazliah.  Id.

On September 18, 2013, Plaintiffs met with a USCIS
official.  Id.  They asked when a decision would be made on
Ringgold's petition, which had been pending since December 2009.
Id. at 72; ECF No. 31-1, PageID # 299.  The USCIS official
responded that the issue was better left to the end of the
interview.  AR at 72.  The USCIS official told Plaintiffs that
the official wanted to interview them separately, but they

refused, citing their frustration with the process and the humiliation of being interviewed separately.  Id.  The official told them that if they refused to be interviewed separately, USCIS would make a decision based on the evidence already obtained.  Id.  Defendants' position is that, by refusing to be interviewed separately, Plaintiffs waived the opportunity to be confronted with, and to rebut, adverse evidence obtained after the Notice of Intent to Deny issued.  ECF No. 30, PageID # 252.

On September 20, 2013, Plaintiffs filed a Verified Complaint for Mandamus and for Declaratory Relief.  ECF No. 1.

On November 27, 2013, USCIS denied Ringgold's I-130, stating that Ringgold had failed to meet her burden of proof regarding her relationship with Mazliah.  AR at 63, 66-75.  USCIS cited the following evidence as contributing to its finding that a bona fide marriage did not exist: (1) the rapidity of the marriage after the parties first met; (2) time the parties spent apart while Ringgold lived in California for approximately four months and in Australia for eight months; (3) evidence that the parties were living apart while in Hawaii, including statements by multiple individuals that they recognized photos of either Ringgold or Mazliah, but not both; (4) evidence that Ringgold had lived with her mother until November 2011; (5) indications of relationships with other individuals outside of the marriage, including information that Mazliah was regularly seen with a

girlfriend, information from Ringgold's father that Ringgold had brought a man named Patrick, identified as her boyfriend, to a family Thanksgiving gathering in 2011 and that she had dated Patrick until March 2012, and information from Ringgold's father that Ringgold had been dating an Australian man that she went to Australia to live with; (6) contradictory accounts about Ringgold's relationship with her father; (7) Ringgold's concealing of her marriage from her father; (8) Ringgold's claim that her mother knew about the marriage but was unwilling to prepare a statement to that effect; (9) information from Ringgold's father that Ringgold's relatives did not know about her marriage; (10) information from Ringgold's father and stepmother that Ringgold was living in Waikiki in late 2012 and had asked to live with them; (11) inconsistencies regarding the reason Ringgold spent time in Australia; and (12) Ringgold's failure to inform her family about her travel to Israel until after her return.  Id. at 73.

On November 27, 2013, USCIS denied Mazliah's I-485 based on the denial of Ringgold's I-130 and on Mazliah's failure to demonstrate entitlement to a visa on any other grounds.  ECF No. 14-4.

On March 12, 2014, Plaintiffs filed their First Amended Complaint for Declaratory Relief, seeking a declaration that the denial of Ringgold's I-130 and Mazliah's I-485 was "arbitrary,

capricious, not supported by the evidence and violative of
Plaintiffs' due process rights under the United States
Constitution and not in accordance with law and applicable
implementing regulations governing marriages between aliens and
United States citizens." ECF No. 14, PageID # 77. Plaintiffs
contest USCIS's view of their marriage, denying, among other
things, that they had relationships with other people after they
got married.

Both parties seek summary judgment on Plaintiffs'
claims. See ECF No. 29; ECF No. 31.

III.     **STATUTORY FRAMEWORK.**

A U.S. citizen seeking classification of a noncitizen
spouse as an "immediate relative" may file a Form I-130, Petition
for Alien Relative, with USCIS. 8 C.F.R. § 204.1(a)(1). The
petitioner bears the burden of establishing his or her spouse's
eligibility. 8 C.F.R. § 103.2(b)(1); Avitan v. Holder, No.
C-10-03288-JCS, 2011 WL 499956, at *7 (N.D. Cal. Feb. 8, 2011).
If the I-130 is approved, the noncitizen spouse may seek
adjustment to permanent resident status through a Form I-485.

An I-130 must not be approved if the marriage upon
which the petition is based was entered into for the purpose of
evading immigration laws. 8 U.S.C. § 1154(c); Vasquez v. Holder,
602 F.3d 1003, 1014 (9th Cir. 2010) ("A marriage that is entered
into for the primary purpose of circumventing the immigration

laws, referred to as a fraudulent or sham marriage, does not enable an alien spouse to obtain immigration benefits." (brackets and internal quotation marks omitted)).

A marriage is considered a sham "if the bride and groom did not intend to establish a life together at the time they were married." Bark v. Immigration & Naturalization Serv., 511 F.2d 1200, 1201 (9th Cir. 1975). "Evidence relevant to their intent includes, but is not limited to, proof that [the beneficiary] was listed on [the petitioner's] insurance policies, property leases, income tax forms or bank accounts, and testimony or other evidence regarding their courtship, wedding ceremony and whether they shared a residence." Damon v. Ashcroft, 360 F.3d 1084, 1088 (9th Cir. 2004). Conduct of the parties after their marriage is relevant "to the extent that it bears upon their subjective state of mind at the time they were married." Bark, 511 F.2d at 1202.

"Substantial and probative evidence" that the marriage was entered into to evade the immigration laws must exist for an I-130 to be rejected on that basis. Damon, 360 F.3d at 1088; Avitan, 2011 WL 499956, at *7. To reverse a decision under the substantial evidence standard, "the evidence must be so compelling that no reasonable factfinder could fail to find the facts were as the alien alleged." Singh v. Reno, 113 F.3d 1512, 1514 (9th Cir. 1997).

**IV.        STANDARD.**

Under the Administrative Procedure Act ("APA"), agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" must be set aside.  5 U.S.C. § 706; <u>see also</u> <u>Butte Envtl. Council v. U.S. Army Corps of Eng'rs</u>, 620 F.3d 936, 945 (9th Cir. 2010).  Review under the arbitrary and capricious standard is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." <u>Sacora v. Thomas</u>, 628 F.3d 1059, 1068 (9th Cir. 2010) (internal quotation marks and citation omitted).  "A reasonable basis exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." <u>Arrington v. Daniels</u>, 516 F.3d 1106, 1112 (9th Cir. 2008) (internal quotation marks and citation omitted).  An agency's decision will be set aside only if:

> [I]t has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

<u>Butte</u>, 620 F.3d at 945 (internal quotation marks and citation omitted).  A court may not "infer an agency's reasoning from mere silence," but "[e]ven when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the

decision on that account if the agency's path may reasonably be discerned." Crickon v. Thomas, 579 F.3d 978, 982 (9th Cir. 2009) (internal quotation marks and citation omitted). Review of agency action under the APA is generally limited to "the record that was before the agency at the time the challenged decision was made." Greater Yellowstone Coal., Inc. v. Servheen, 665 F.3d 1015, 1024 n.2 (9th Cir. 2011).[1]

In reviewing an administrative decision under the APA, "there are no disputed facts that the district court must resolve." Occidental Eng'g Co. v. I.N.S., 753 F.2d 766, 769 (9th Cir. 1985). Instead, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Id.; see also City & Cnty. of San Francisco v. United States, 130 F.3d 873, 877 (9th Cir. 1997). "[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." Occidental, 753 F.2d at 770.

V.     **ANALYSIS.**

    A.    **Defendants Are Entitled to Summary Judgment Under the APA.**

Plaintiffs fail to show that USCIS's denials of

---

[1] Plaintiffs' papers include materials that are not part of the administrative record. Even if the court were to consider those materials, they would not establish that USCIS's decision should be vacated.

Ringgold's I-130 and Mazliah's I-485 must be set aside under the APA. Because the record reflects a reasonable basis for USCIS's decisions, Defendants are entitled to summary judgment on Plaintiffs' claim that USCIS's decisions were arbitrary and capricious and subject to reversal under the APA.

In numerous instances, Plaintiffs' assertions conflicted with what other individuals told USCIS. For example, while Plaintiffs claimed to have lived together at several different places and offered statements from people confirming Plaintiffs' shared residences, USCIS spoke with other individuals who could only recall having seen one Plaintiff at a reported location. USCIS was also presented with different accounts of where Ringgold had lived at different times after she got married. In addition, more than one person told USCIS that Mazliah and/or Ringgold appeared to be romantically involved with someone other than his or her spouse after the date of the marriage, although Plaintiffs have denied having had such relationships.

Even within Plaintiffs' own assertions there were inconsistences. For example, Ringgold stated in an affidavit on January 27, 2012, that she and Mazliah had only lived at a Queen Street address during their marriage, yet there are several addresses in Hawaii at which Plaintiffs claimed to have lived together. AR at 8-10, 92, 96.

The inconsistences in the administrative record, along with factors such as how soon after they met the parties got married, Ringgold's time living in California and Australia, and evidence that Ringgold had not told family members about her marriage, gave USCIS a reasonable basis for denying Ringgold's petition.

No one could deny that Plaintiffs did provide some evidence of the legitimacy of their marriage. ECF No. 31-1, PageID # 311-14; ECF No. 37, PageID # 662. This evidence included rental agreements, utility statements, vehicle insurance cards, bank statements, unnotarized "affidavits" from various individuals, and photos from Plaintiffs' wedding and reception. But USCIS could have reasonably concluded that this evidence was outweighed by other evidence uncovered during the investigation. AR at 66, 67; see Brown v. Napolitano, 391 F. App'x 346, 351 (5th Cir. 2010). Plaintiffs have not demonstrated that the evidence they provided was "so compelling that no reasonable fact-finder could fail to arrive at their conclusion." Id. (internal quotation marks and citation omitted). Plaintiffs' contention that USCIS failed to even consider or evaluate what they submitted or "dismissed out of hand" their submissions is nothing more than a naked allegation. ECF No. 37, PageID # 664-65.

Plaintiffs also argue that USCIS "applied the incorrect legal standard" by requiring that Plaintiffs have a "more

conventional or successful marriage than citizens." ECF No. 31-1, PageID # 308. Plaintiffs rely extensively on Bark v. Immigration & Naturalization Service, 511 F.2d 1200 (9th Cir. 1975), which states:

> The concept of establishing a life as marital partners contains no federal dictate about the kind of life that the partners may choose to lead. Any attempt to regulate their life styles, such as prescribing the amount of time they must spend together, or designating the manner in which either partner elects to spend his or her time, in the guise of specifying the requirements of a bona fide marriage would raise serious constitutional questions. Aliens cannot be required to have more conventional or more successful marriages than citizens.
>
> Conduct of the parties after marriage is relevant only to the extent that it bears upon their subjective state of mind at the time they were married. Evidence that the parties separated after their wedding is relevant in ascertaining whether they intended to establish a life together when they exchanged marriage vows. But evidence of separation, standing alone, cannot support a finding that a marriage was not bona fide when it was entered.

Id. at 1201-02 (citations omitted).

The USCIS decision challenged here does not conflict with Bark. USCIS did not conclude that Plaintiffs had a sham marriage just because they had not spent a certain amount of time together or had an unconventional lifestyle. Evidence that Plaintiffs spent fairly substantial portions of their marriage apart was a factor that USCIS considered in deciding whether the

13

parties intended at the time they exchanged marriage vows to establish a life together, but it certainly was not the only factor USCIS relied on in its decision. See AR at 73. As Bark states, "the time and extent of separation, combined with other facts and circumstances, can . . . adequately support[] the conclusion that a marriage was not bona fide." Id. at 1202.

Plaintiffs make two arguments in which they seek to bind USCIS to what they allege were early positions taken by USCIS.

First, Plaintiffs argue that USCIS told them at their first interview that their I-130 and I-485 would be approved and that Mazliah would receive his green card. ECF No. 31-1, PageID # 310-11. Plaintiffs do not actually attest to this occurrence. Instead, it is asserted in a memorandum prepared by their attorney. See ECF No. 31-1, PageID # 311. The only evidentiary support for this assertion is the check in the "Approved Visa Petition" box on a copy of Mazliah's I-485. See AR at 622. But even if a USCIS official preliminarily told Plaintiffs the I-130 and I-485 would be approved, Plaintiffs cite no authority binding USCIS to that outcome or requiring this court to allow the alleged statement to override the later formal denial.

Second, Plaintiffs seek to bind USCIS to what Plaintiffs say was a USCIS failure to note discrepancies in the evidence at the third interview on December 11, 2011. Id.,

PageID # 311.  As Plaintiffs put it, "the officer did not note any discrepancies or conflicts in their testimony or evidence submitted and no questions were asked which is the usual procedure for a Stokes Investigator."  Id.  Not only do Plaintiffs fail to support their contentions through citation to the administrative record, Plaintiffs nowhere demonstrate that the failure to note discrepancies or ask questions at the end of an interview renders a later USCIS denial of an application invalid or inconsistent with the record or with governing law. Nothing requires an interviewer to give either a positive or negative indication of the likely decision, and a failure in either direction gives rise to no illegality and to no right on the part of an applicant to any particular decision.

The court views Plaintiffs' main argument to be that USCIS denied them a chance to respond to negative information. They assert that, in denying their applications, USCIS relied on evidence that "had not previously been revealed to them" from Ringgold's father, stepmother, and former boyfriend, among others.  Plaintiffs say that, by failing to allow them to examine and rebut this evidence, USCIS violated 8 C.F.R. §§ 103.2(b)(8) and (16).  ECF No. 14, PageID # 93; ECF No. 31-1, PageID # 315. This argument is unpersuasive.

One of the provisions Plaintiffs cite, 8 C.F.R. § 103.2(b)(8), is irrelevant to the issue of the opportunity to

examine and rebut adverse evidence. That provision addresses requests by USCIS for evidence and notices of intent to deny.

The other provision, 8 C.F.R. § 103.2(b)(16), does address disclosure of negative information and an opportunity to respond, but Plaintiffs fail to demonstrate that the provision was violated. The section states:

> If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered[.]

On September 18, 2013, Plaintiffs could indeed have learned about and responded to evidence obtained by USCIS after it issued the Notice of Intent to Deny, as required by 8 C.F.R. § 103.2(b)(16). However, Plaintiffs declined that opportunity when they refused to be interviewed separately. AR at 72. The administrative record reflects that, at the interview, Plaintiffs were read a document that stated: "Each of you will be interviewed separately and asked a series of questions regarding your relationship. Your answers will be compared and if there are discrepancies/differences in your responses you will be given an opportunity to explain after each of you have been interviewed." AR at 751. The administrative record also reflects that Plaintiffs were told that the interviews were

necessary to review new information, but that Plaintiffs refused
to be interviewed separately.  They were then told that USCIS
would make a decision based on the evidence obtained to date.
ECF No. 14, PageID # 91.

Plaintiffs do not contend that USCIS is misdescribing
what occurred.  That is, they are not denying that they refused
separate interviews and knew that USCIS would rely on the
material in the record.  In fact, Plaintiffs confirm these
circumstances in their First Amended Complaint:

> 33. At the September 18, 2013 meeting,
> Plaintiffs demanded to know what specific
> problems the Department had with their
> marriage and asked when a decision would be
> made on their case. Officer Sawyer refused to
> identify what problems the Department had
> with their case contrary to 8 CFR 103.2
> (b)(16) but *stated that he needs to interview*
> *them separately on matters since their last*
> *interview* and that the Department would need
> time to evaluate the evidence.
> . . . .
>
> 34. Plaintiffs made it clear that they
> were willing to answer any questions together
> but not separately as the emotional strain
> was just too much.
> . . . .
>
> 35. Officer Sawyer . . . announced that
> the Department establishes the procedures for
> processing cases and *that if DIANA and VICTOR*
> *did not wish to be interviewed separately,*
> *the Department would make a decision based on*
> *the evidence in their case. DIANA and VICTOR*
> *then repeated their joint decision to Officer*
> *Sawyer stating that they are more than*
> *willing to be interviewed together but not*
> *separately again.*

ECF No. 14, PageID # 90-91 (emphasis added).

Nor can Plaintiffs complain that they were unaware that USICS had been in further contact with Ringgold's father. Their First Amended Complaint alleges, at paragraph 33, that Ringgold knew in September 2013 that a USCIS investigator had again spoken with her father and provided him with negative information about Mazliah, and that Ringgold's father thereafter declined to see Mazliah again.

Only the *opportunity* to rebut adverse information is required by 8 C.F.R. § 103.2(b)(16). The record shows that Plaintiffs were provided with that opportunity. This court's review is highly deferential. Given the absence of evidence of a violation of 8 C.F.R. § 103.2(b)(16), the court upholds USCIS's decision.

Plaintiffs do not show that USCIS acted arbitrarily, capriciously, or in a manner otherwise contrary to law in denying Ringgold's I-130 and Mazliah's I-485. The record reflects that USCIS adequately considered the evidence and reached a reasonable conclusion supported by the record. Defendants are entitled to summary judgment on Plaintiffs' claim for relief under the APA.

### B. Defendants Are Entitled to Summary Judgment on Plaintiffs' Due Process Claim.

#### 1. Procedural Due Process.

Plaintiffs assert that they have "protected liberty and property interest[s] in their marriage that give[] rise to a

right to constitutionally adequate proce[d]ures in the adjudication of the I-130 petition." ECF No. 37, PageID # 662.

Even assuming Plaintiffs have such protected interests, Plaintiffs fail to clearly identify what was constitutionally inadequate about the procedures USCIS employed and thus how their procedural due process rights were violated. "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998). Plaintiffs do not show that they were denied adequate procedural protections. To sustain a procedural due process claim, it is not enough to show a protected interest and state, without explanation, that adequate procedures are required. Plaintiffs must identify how the procedures used fell short.

In their First Amended Complaint, Plaintiffs appear to be arguing that their procedural due process rights were violated "because they were [not] given the opportunity to examine and rebut adverse evidence." ECF No. 24, PageID # 93. As noted above, the administrative record reflects that Plaintiffs were given an opportunity to examine and rebut adverse evidence not previously disclosed,[2] but refused that opportunity because they

_____

[2] Plaintiffs were provided with the opportunity to rebut adverse evidence presented in USCIS's Notice of Intent to Deny, and did take advantage of that opportunity through their April 16, 2012 letter. AR at 2-55. From Plaintiffs' allegations, it

19

did not wish to be interviewed separately.

## 2. Substantive Due Process.

Plaintiffs argue that USCIS's decisions denying Ringgold's I-130 and Mazliah's I-485 violate their substantive due process rights by:

> (1) Dictating the amount of time they must spend together as a married couple;
> (2) Restricting their freedom and liberty of travel and movement;
> (3) Attempting to regulate their life styles;
> (4) Designating the manner in which they spend their time [f]or employment, recreation, and education;
> (5) Erroneously finding that anytime spent apart or alone by Plaintiffs show that Plaintiffs never intended to live together as a married couple;
> (6) Acting contrary to the concept that establishing a life together as marital partners contains no federal dictate about the kind of life that the Plaintiffs may choose to lead and attempts to regulate their life style;
> (7) Finding that Plaintiffs are required to have a more conventional or more successful marriage than citizens;
> (8) That DIANA has a constitutional right to tell or not tell her father of her marriage if she so elects and no adverse finding may be attributed to that decision if there is a reasonable explanation[.]

ECF No. 40, PageID # 778-79.

It is Plaintiffs' burden to establish the alleged

---

does not appear that their complaint regarding the opportunity to rebut adverse evidence extends to any evidence contained in the Notice of Intent to Deny. Any such argument would find no support in the record. Plaintiffs' objection appears to relate solely to evidence USCIS obtained after issuing the Notice of Intent to Deny.

constitutional violation.  They do not meet their burden of
showing that they have been deprived of life, liberty, or
property.  See Action Apartment Ass'n, Inc. v. Santa Monica Rent
Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007) ("We have long
held that a substantive due process claim must, as a threshold
matter, show a government deprivation of life, liberty, or
property.") (internal quotation marks and citation omitted).

     Although Plaintiffs list things allegedly dictated by
USCIS, USCIS's denial of Ringgold's I-130 and Mazliah's I-485
does not actually require or prevent Plaintiffs from having
whatever relationship they please.  At most, the denial affects
Mazliah's liberty of movement by denying him permanent resident
status, but there is no constitutionally protected right to an
immigrant visa.  Smirnov v. Clinton, 806 F. Supp. 2d 1, 12
(D.D.C. 2011); see also United States ex rel. Knauff v.
Shaughnessy, 338 U.S. 537, 542 (1950) ("[A]n alien who seeks
admission to this country may not do so under any claim of right.
. . . [It] is a privilege granted by the sovereign United States
Government.").

     The items Plaintiffs list echo the idea in Bark that
"serious constitutional questions" arise when the process of
identifying a bona fide marriage is used to "dictate . . . the
kind of life that the partners may choose to lead" or to require
that "[a]liens . . . have more conventional or more successful

                              21

marriages than citizens." <u>Bark</u>, 511 F.2d 1201-02.  As previously discussed, USCIS's decision does not run afoul of <u>Bark</u>.  USCIS permissibly based its decision, in part, on the time Plaintiffs spent apart, and did not deny Ringgold's I-130 and Mazliah's I-485 on the theory that bona fide marriages only exist when individuals spend a specific amount of time together and participate in a certain lifestyle.  USCIS did not determine that time spent apart necessarily establishes that "Plaintiffs never intended to live together as a married couple," as Plaintiffs contend.  ECF No. 41, PageID # 779.  Instead, USCIS determined that the fairly substantial periods of time Plaintiffs spent apart was one factor, among others, suggesting that Plaintiffs had not intended to establish a life together at the time they were married.  <u>Bark</u> itself accepts such an approach, stating that "the time and extent of separation, combined with other facts and circumstances, can . . . adequately support[] the conclusion that a marriage was not bona fide."  511 F.2d at 1202.

Plaintiffs also contend that Ringgold's substantive due process rights were violated because she has "a constitutional right to tell or not tell her father of her marriage if she so elects and no adverse finding may be attributed to that decision if there is a reasonable explanation."  ECF No. 41, PageID # 779.  The cases Plaintiffs cite as support for this proposition appear to again refer to the principles outlined in <u>Bark</u>, and do not

otherwise undercut USCIS's determination.  USCIS did not say
that, unless Ringgold disclosed her marriage to her father, she
could not establish a bona fide marriage.  The secrecy of her
status was instead one of numerous circumstances taken into
account.  Ringgold's purported "constitutional right" to keep her
marriage a secret from her father was not violated by USCIS.
Ringgold was free to choose to keep information to herself, but
USCIS was not prohibited by the Constitution from considering
that choice, any more than it was prohibited from considering her
choice to travel across state boundaries and separate herself
from Mazliah.

### C.  Plaintiffs Are Not Entitled to Attorneys' Fees and Costs Pursuant to 28 U.S.C. § 2412.

The court grants Defendants' motion for summary
judgment and denies Plaintiffs' motion.  Plaintiffs' request for
attorneys' fees and costs pursuant to 28 U.S.C. § 2412 is
therefore denied.

### VI.  CONCLUSION.

Plaintiffs' motion for summary judgment is denied, and
Defendants' motion for summary judgment is granted.  This order
disposes of all matters raised in this action.  The Clerk of
Court is directed to enter judgment in favor of Defendants and to
close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 25, 2014.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Ringgold, et al. v. Johnson, et al., Civ. No. 13-00479 SOM/KSC; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT